IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RALPH CLARK,

    Petitioner,

    vs.

A. P. KANE, Warden,

    Respondent.

No. C 06-7537 JSW (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner, a prisoner of the State of California, has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer and a memorandum of points and authorities in support of the answer. He also lodged the record with the Court. Petitioner has filed a traverse. For the reasons stated below, the petition is denied on the merits.

**BACKGROUND**

Petitioner was convicted of murder and attempted murder in Los Angeles County Superior Court in 1987. (Ans., Ex. A.)[1] He was sentenced to fifteen years to life in state prison for the murder and to a consecutive term of ten years for the attempted murder. (*Id.*) The petition here is directed to the Board of Prison Hearings' June 16, 2005, decision finding him unsuitable for parole.

---

[1] Citations to "Ex." are to the exhibits making up the record in the case. They are attached to Respondent's answer.

# DISCUSSION

## I. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the Petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

## II. Respondent's Claims

In order to preserve the issues for appeal, Respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process

2

protections available are a right to be heard and a right to be informed of the basis for the denial – that is, Respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit. *See Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.").

**III. Petitioner's Claims**

As grounds for federal habeas relief, Petitioner contends that: (1) there was not "some reliable evidence" to support the parole denial; (2) the Board's basing its denial on the immutable circumstances of his offense, and in the face of evidence of rehabilitation, violated due process; (3) the Board violated his rights under the *Apprendi/Blakely* line of cases; and (4) the regulations governing parole are unconstitutionally vague.

**1. "Some Evidence" Claim**

Petitioner contends that denial of parole was not supported by "some evidence" and thus violated his due process rights.

The Ninth Circuit has held that it violates due process if parole is denied without "some evidence in the record" to support the denial or if the denial is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the

conclusion reached by the [parole] board." *Hill*, 472 U.S. at 455-56; *see Sass*, 461 F.3d at 1128. "[The] some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In. re Lawrence*, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. *Id.* at 1205-06.

The chairman of the Board read into the record, without objection, this summary of the facts of the crime, taken from a probation officer's report:

> On May 2nd, 1981, the victim, Garvatta Cardines, and his relatives attended a 25th wedding anniversary party at the Moose Lodge in Baldwin Park. The party finally broke up in the early morning hours of May 3rd, 1981. The victim and the relatives returned to his home . . . between 3:00 a.m. and 3:30 a.m. As four female relatives dr[o]ve up to the house, they were approached by [Petitioner], his brother, and two other individuals[,] all of whom are Eastside Baldwin gang members. He indicated to the females their desire to join the party. Thomas Cardines intervened and told them that it was just a family party, and they could not attend. An argument ensured and Garvatta Cardines came out of his home to help his son; however, they were both struck in the head by a metal pipe wielded by Co-defendant Ramos. At that point, [Petitioner] pulled out a Smith & Wesson .357 magnum revolver and shot Garvatta Cardines once between the eyes. He then shot Thomas Cardines in the chest. As he fell to the ground, [Petitioner] walked over to him and said, this time I am going to put you away. [Petitioner] then fired another round into Thomas Cardines' chest. [Petitioner], his brother, and two other co-defendants left the scene. [Petitioner] and three co-defendants were positively identified in a subsequent investigation. . . . Garvatta Cardines was pronounced dead . . . . Thomas Cardines sustained a bullet wound in both of his lungs and was hospitalized . . . in critical but stable condition.

(Ex. D at 11-14.)

The nature of the offense was one basis for the Board's conclusion that Petitioner would be a danger to society if paroled. At the time of the hearing in 2005 Petitioner was forty-six years old and had served a bit more than twenty-three years on his

4

indeterminate sentence of twenty-five years to life. This significant passage of time certainly reduces the evidentiary value of the offense itself, but the Court concludes that the particularly brutal circumstances of the offense are still entitled to significant weight; whether they would be enough in themselves to constitute "some evidence" need not be resolved, because the denial also is supported by other evidence, namely that Petitioner had failed to document employment opportunities. (*Id.* at 39-51, 73-74.) The chances of Petitioner reverting to crime and thus being a danger to society would be greater if he were unable to support himself on parole, so the absence of this evidence is relevant to the question whether he would be a threat to society if released. Together, this evidence and the circumstances of the crime were sufficient to constitute "some evidence."

Petitioner also contends that the evidence upon which the denial was based was not "reliable," and thus that his due process rights were violated.

The Ninth Circuit stated in *McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 2002), that to comply with due process a parole denial must not only be supported by "some evidence," but it must have some indicia of reliability. *Id.* at 904. This was repeated in another parole case, *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003). The *McQuillion* court quoted and cited *Jancsek v. Oregon Board of Parole*, 833 F.2d 1389 (1987). *McQuillion*, 306 F.3d at 904. In *Jancsek* the court held that due process requires that a parole denial be supported by "some evidence," reasoning that *Superintendent v. Hill*, 472 U.S. 445, 456 (1985), which applied that standard to prison disciplinary decisions that affected the length of the prisoner's incarceration, should apply in parole cases because grant or denial of parole also affects the length of incarceration. *Id.* at 1390. As relevant here, however, *Jancsek* also held, without explanation or discussion, that the "some evidence" relied upon by the Board must have "some indicia of reliability." *Id. Jancsek*, in its turn, cited *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987), a disciplinary case, in which the court was squarely presented with the question whether "some evidence" must possess some indication of reliably, and answered "yes." *Id.* at 705. *Cato* cited two cases from other circuits, *Mendoza v. Miller*,

779 F.2d 1287 (7th Cir. 1985), and *Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir. 1982), as support. Like *McQullion*, *Biggs*, *Jancsek*, and *Cato*, those cases did not point to a Supreme Court case that imposed a reliability requirement. *See Mendoza*, 779 F.2d at 1295; *Kyle*, 677 F.2d at 1390-91.

None of the cases discussed above identified a Supreme Court case that imposed the reliability requirement, and this Court has found none. As a consequence, even if the evidence upon which the Board relied here did not have indicia of reliability, that lack would not be a violation of "clearly established Federal law, as determined by the Supreme Court of the United States," and thus would not be grounds for federal habeas relief. *See* 28 U.S.C. § 2254(d). However, and more importantly, even if indicia of reliability are required, the Court finds that the probation report does contain an indication of reliability by virtue of its being an official report completed within the scope of the reporting officers' employment. Accordingly, there was no constitutional violation, and the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 2. "Biggs Claim"

In a line of cases the Ninth Circuit has discussed the constitutionality of denying parole when the only basis for denial is the circumstances of the offense. *See Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003).

In *Biggs* the court said that it might violate due process if the Board were to continue to deny parole to a prisoner because of the facts of his or her offense and in the face of evidence of rehabilitation. 334 F.3d at 916-17. No legal rationale for this statement was provided, and it was unclear whether the court was suggesting that the continued denial of parole would be a new sort of due process violation or whether it was simply expressing the thought that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled. This

ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54. It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would be fundamentally unfair and violate due process. As the dissenters from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might be dictum is controlling authority if the issue was presented and decided, even if not strictly "necessary" to the decision. *Irons v. Carey*, 506 F.3d 951, 952 (9th Cir. Nov. 6, 2007) (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005)).

Depending on whether the discussion of dictum in the dissent from denial of rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized that due process right, which for convenience will be referred to in this opinion as a "*Biggs* claim." Here, one of claims is a "*Biggs* claim," in that he contends that repeatedly using the circumstances of his offense as grounds for denial violates due process, separate from his "some evidence" claim.

Petitioner has failed to establish the predicate for his *Biggs* claim. For one thing, Petitioner's parole was not denied solely because of the circumstances of his offense, but also because of his failure to provide adequate evidence of his employment opportunities. And even assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim."

The state courts' rejections of this claim were not contrary to, or unreasonable applications of, clearly-established Supreme Court authority.

7

### 3. *Apprendi* Claim

Petitioner also contends that the panel in effect made a finding of fact that the crime of which he was convicted was more serious than was found to be the case at the time of trial. In support of this contention he cites *Blakely v. Washington*, 542 U.S. 296 303-04 (2004).

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny the Supreme Court adopted the rule that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [than the statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California*, 127 S. Ct. 856, 863-64 (2007). The relevant statutory maximum "'is not the maximum sentence a judge may impose after finding additional fact, but the maximum he may impose *without* any additional findings." *Id.* at 860 (quoting *Blakely*, 542 U.S. 303-04).

The *Blakely* court explained that the *Apprendi* rationale does not apply to indeterminate sentencing within the permitted sentence range. *See Blakely*, 542 U.S. at 309 ("Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.").

In California, the sentence for a person convicted of second degree murder is fifteen years to life.[2] Cal. Penal Code § 190(a). In the case of those sentenced to a term of years to life, as petitioner was on the murder conviction, the sentence is a life sentence until her or she is found suitable for parole. *See Dannenberg*, 34 Cal. 4th at 1083-84 ("an inmate whose offense was so serious as to warrant, at the outset, a maximum term

---

[2] Petitioner here was also convicted of attempted murder and sentenced to a consecutive determinate term of ten years on that charge, giving him an effective sentence of twenty-five years to life. (Ex. A.)

8

1  of life in prison, may be denied parole during whatever time the Board deems required
2  for 'this individual' by 'consideration of the public safety.'" (quoting Cal. Penal Code §
3  3041(b) (emphasis in original)). And although there are regulations applicable to the
4  parole board's decision whether to find an inmate suitable for parole, those regulations
5  "are set forth as general guidelines; the importance attached to any circumstance or
6  combination of circumstances in a particular case is left to the judgment of the panel."
7  Cal. Code Regs., tit. 15, § 2402 (c), (d)). That is, the regulations do not require a
8  particular outcome when the Board finds a particular fact or facts, which is the required
9  predicate for application of the *Apprendi/Blakely* rule. Because petitioner does not have
10 a legal right to a lesser sentence when particular facts are found, *see Blakely*, 542 U.S. at
11 309, the *Apprendi/Blakely* rule is inapplicable and this claim is without merit.

### 4. Vagueness

Petitioner contends that the parole regulations' use of the phrase "carried out in a manner which demonstrates an exceptional[ly] callous disregard for human suffering" is unconstitutionally vague. 15 Cal. Code Regs. § 2402(c)(1)(D). As respondent points out, this claim is not exhausted, but because it will be denied, it is unnecessary to dismiss the case as mixed. *See* 28 U.S.C. § 2254(b)(2).

Vagueness challenges made under the Due Process Clause "rest on the lack of notice." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). A statute or regulation is unconstitutionally vague "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement." *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989). Vagueness challenges to statutes or regulations that do not threaten First Amendment rights, such as this one, are analyzed on an as-applied basis. *Maynard,* 486 U.S. at 361. Thus, the question here is whether Section 2402(c)(1)(D) provided Petitioner with adequate notice and the state court with adequate guidance.

The phrase, "exceptionally callous disregard for human suffering," is no more vague than "the utmost disregard for human life, i.e., the cold-blooded pitiless slayer,"

9

which has been held sufficiently determinate for death penalty use. *See Arave v. Creech*, 507 U.S. 463, 470-78 (1993) (Idaho death penalty statute citing as an aggravating factor crimes carried out in an "utter disregard for human life" was not impermissibly vague because limiting construction had been adopted which defined factor as those crimes demonstrating "the utmost disregard for human life, i.e., the cold-blooded pitiless slayer"). Given that "[t]he Due Process Clause does not require the same precision in the drafting of parole release statutes as is required in the drafting of penal laws," *Hess v. Board of Parole and Post-Prison Supervision*, 514 F.3d 909, 913-14 (9th Cir. 2008), and a phrase no less vague was been upheld by *Arave* in the penal law context, it is clear that this claim is without merit. *See, e.g., Edwards v. Curry*, 2009 WL 1883739, *9 (N.D. Cal. 2009) (unpublished) ("because these sub-factors [which include 'exceptionally callous disregard for human suffering'] are set forth in simple plain words, such that a reasonable person of ordinary intelligence would understand their meaning and the conduct they proscribe, the notice requirement is satisfied."); *Wagoner v. Sisto*, 2009 WL 2712051, *6 (C.D. Cal. 2009) (unpublished) (stating "the five sub-factors outlined in § 2402(c) (1)(A)-(E) serve to limit the 'heinous, atrocious or cruel' language of section 2402(c) and narrow the class of inmates that are found unsuitable for parole ... thus, the terms are not unconstitutionally vague"); *Burnright v. Carey*, 2009 WL 2171079, *5 (E.D. Cal. 2009) (unpublished) (finding that after reading Cal. Penal Code § 3041(b) together with 15 CCR §§ 2402(c) and (d), a reasonable person of ordinary intelligence would understand, and therefore be on notice, regarding the standards for parole eligibility).

**IV.  Appealability**

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

A Petitioner may not appeal a final order in a federal habeas corpus proceeding

10

without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons set out above, jurists of reason would not find the result debatable. A certificate of appealability will be denied.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED. A certificate of appealability is DENIED. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: February 19, 2010.

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RALPH CLARK,

    Plaintiff,

v.

A.P. KANE et al,

    Defendant.

Case Number: CV06-07537 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 19, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ralph A. Clark
C45216
P.O. Box 689
Soledad, CA 93960

Dated: February 19, 2010

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

G:\JSWALL\Pro-Se Prisoner\2006\Clark7537.denyhc.wpd